[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 8073
The plaintiffs Michael and Victoria Paglia commenced this action against the defendant, The McCue Mortgage Company, alleging a breach of contract and CUTPA violations arising out of the defendant's revocation of a mortgage commitment given to the plaintiffs by the defendant. The court finds the following facts:
In March, 1992, the plaintiffs entered into a written contract to purchase and construct a home on Lot #1, Phoenix Avenue, Naugatuck. The sale contract provided that the plaintiffs' obligation to purchase the home was contingent on the plaintiffs' ability to obtain financing. The sale contract provided for a mortgage contingency of August 15, 1992. The closing was scheduled for September 15, 1992.
On March 31, 1992, the plaintiffs applied to the defendant to obtain a CHFA/FHA mortgage, and submitted a mortgage approval application to the defendant. The application represented Mr. and Mrs. Paglia's monthly incomes as $2,156.00 and $1,136.00, respectively. The defendant also sent a request for verification of employment to Mr. Paglia's employer, Saab Scania of America, which was returned to the defendant by Saab on April 9, 1992. Saab indicated that Mr. Paglia's probability of future employment was good. Because the plaintiffs' incomes, as represented in the application, fell within the requirements for a CHFA loan, on August 12, 1992, the defendant issued a mortgage commitment to the plaintiffs. The commitment contained several conditions and by its terms it expired on December 15, 1992. The plaintiffs paid the origination fee and signed the commitment letter, thus agreeing to its terms.
As a requirement of the application process for a CHFA mortgage, the plaintiffs were required to sign a borrower affidavit. The borrower affidavit signed by the plaintiffs states that:
 as an essential part of the closing of a mortgage loan pursuant to the Housing Mortgage Finance Program of the Connecticut Housing Finance Authority (the "Authority") to finance the purchase by [the borrowers] of a [residence] and with the knowledge that the Authority and Lender will rely on the statements contained herein, [the borrowers] do hereby CT Page 8074 depose and say . . .
 17. The undersigned have not incurred other obligations and do not foresee circumstances in the immediate future that would impair their ability to meet the monthly mortgage loan payments.
In addition to executing the affidavit, the plaintiffs also initialed each clause, including the one quoted above.
One of the conditions of the mortgage commitment required the plaintiffs to execute a reaffirmation of the borrower affidavit prior to the closing. The reaffirmation document requires a CHFA borrower to "reaffirm that the statements and information contained in the Borrower Affidavit . . . were true, accurate, and complete when made and remain true, accurate, complete, and unchanged." The purpose of this condition was to ensure to the lenders that the plaintiffs' income and liabilities had not changed in the interim between the application and the closing, thus affecting their ability to meet the mortgage payments. The mortgage commitment expressly stated that "FAILURE TO SATISFACTORILY MEET ANY OF THESE CONDITIONS LISTED . . . . WILL RENDER THIS COMMITMENT NULL AND VOID."
The home was not completed on time and the parties extended the closing date indefinitely. On September 22, 1992, Mr. Paglia's employer, Saab, announced that it intended to relocate its Connecticut operations out of state and was thus laying off its work force — which included Mr. Paglia — on or about February 26, 1993. The defendant sought a verification of Mr. Paglia's employment on the same day. The verification was returned to the defendant by Saab on October 14, 1992, indicating that Mr. Paglia was to be laid-off in February, 1993. As of October 14, 1992, the closing on the plaintiffs' house had not yet occurred.
Because the loan application was based on the income of both plaintiffs, and Mr. Paglia was to be laid off, the defendant was unable to use Mr. Paglia's income as a basis for the income requirements necessary to qualify for the CHFA mortgage. On October 15, 1992, the defendant rejected the plaintiffs' mortgage application, indicating in the rejection that the plaintiffs had insufficient income to support the mortgage.
Mr. Paglia did loose his job in February, and was out of work CT Page 8075 for almost one year. As both parties note, the ultimate issue in the case is whether Mr. Paglia's loss of income justified the defendant to withdraw the commitment.
The plaintiffs frame their complaint as a breach of contract action. "The key elements of a breach of contract action are: (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages. "Posner v. Minnesota Mining Mfg. Co., Inc., 713 F. Sup. 562,563 (E.D.N.Y. 1989), citing Stratton Group, Ltd. v. Sprayregen,458 F. Sup. 1216 (S.D.N.Y. 1978). "The law is clear concerning conditions necessary to require performance of a conditional contract. `If the condition is not fulfilled the right to enforce the contract does not come into existence.' Feinberg v.Berglewicz, 32 Conn. App. 857, 860, [632 A.2d 709] (1993)."Miceli v. Helyer, Superior Court, Judicial District of Hartford, Docket No. 370264 (January 26, 1994, Sullivan, L.P., J.).
The defendant argues that the plaintiffs, following the loss of the Mr. Paglia's job, were unable to reaffirm the borrower affidavit — specifically paragraph 17 of that document — and, thus, they were unable to fulfill the condition of the mortgage commitment requiring them to sign the reaffirmation. Therefore, because the plaintiffs were unable to fulfill the conditions of the commitment, the commitment was void under its own terms and the defendant had no obligation to make the loan.
The plaintiffs claim that the defendant did not have sufficient justification to revoke the commitment and, therefore, the revocation of the commitment constituted a breach of contract and a CUTPA violation. The plaintiffs argue that although Mr. Paglia was losing his job, they were willing and able to sign the reaffirmation and represented this fact to the defendant. The plaintiffs argued that they truthfully believed that they did not foresee any circumstances in the future that would prevent them from making their payments. They argue that the defendant "never investigated the prospects of the plaintiff for future employment and arbitrarily determined that the plaintiff would not be able to make payments at a designated time in the future." Plaintiffs' Pretrial Memorandum, p. 3. The plaintiffs, however, cite no case law or other authority for their proposition that it was the defendant's obligation to determine whether Mr. Paglia could obtain substitute employment in order to maintain the income requirements necessary to obtain the CHFA/FHA mortgage. CT Page 8076
Contrary to the plaintiffs' assertion, the terms of the commitment indicate that it was the plaintiffs who had the obligation to prove that they would have suitable monthly income by reaffirming the borrower affidavit. As the record indicates, the plaintiffs were required to submit to the defendant a loan application indicating their monthly income. Also, prior to obtaining the commitment, the plaintiffs were required to swear in the borrower affidavit that they did not foresee any circumstances that would impair their ability to meet the monthly income requirements for the mortgage payment, as represented in the mortgage application they submitted. In addition, as a condition of the commitment, the plaintiffs were required to reaffirm this assertion prior to the closing by sworn statements.
Accordingly, the court finds that it was not the defendant's obligation to determine Mr. Paglia's future employment prospects after it learned that he would be losing his job. The court finds that the Mr. Paglia's impending layoff was a circumstance that would impair the plaintiffs' ability to meet their monthly mortgage loan payments. Therefore, the court finds that the plaintiffs could not have reasonably reaffirmed the borrowers affidavit. It was not the plaintiffs' willingness to sign the reaffirmation document that was critical, but the plaintiffs' ability to reaffirm the borrower affidavit. Accordingly, the court finds that because the plaintiffs were unable to reaffirm the borrower affidavit and, thus, fulfill a condition of the commitment, the defendant was not obligated, under the terms of the commitment, to make the loan.
During trial, the plaintiffs made the assertion that they would have been able to truthfully reaffirm the borrower affidavit because they could have received financial assistance from their family. However, paragraph 17 of the borrower affidavit requires the plaintiffs to assert that they do not foresee "any circumstances that would impair their ability to meet the monthly mortgage loan payments," referring to the plaintiffs. (Emphasis added.) The plaintiffs' family members' incomes were not listed on the application, the family members were not guarantors of the note, and they did not affirm the borrower affidavit. Accordingly, the defendant did not have to rely on the plaintiffs' belief that their family members would have been able to assist them in making the mortgage payments.
Accordingly, the court enters judgment for the defendant on count one of the plaintiffs, complaint. Because the plaintiffs' CT Page 8077 second count, the CUTPA claim, was based on the alleged breach of contract, the court enters judgment for the defendant on count two of the contract, as well.
SYLVESTER, J.